## Case No. 17,007.

### VOSE et al. v. FLORIDA R. CO.[1]

Circuit Court, N. D. Florida. 1870.

RAILROAD COMPANIES—STATE AID—PAYMENTS TO SINKING FUND TRUSTEES—FLORIDA STATUTE.

[Under the Florida internal improvement act of January 6, 1855, §§ 2, 3, 12, the one-half of 1 per cent. which the railroad company, or its purchasers at foreclosure sale, are bound to pay annually to the trustees of the sinking fund, "on the amount of indebtedness, or bond account," is to be calculated upon the amount of bonds still uncanceled, and not on the whole amount of the original issue.]

[This was a bill by Francis Vose and others, trustees, against the Florida Railroad Company, to recover money alleged to be due to the sinking fund. Defendant demurred to the bill.]

BY THE COURT. The question in this case comes before the court upon a demurrer to the bill for want of equity, and for want of jurisdiction, from misjoinder of parties, and as shown upon the face of the bill. The object of the bill is to recover of the defendant the one-half of 1 per cent., semiannually, upon the bonds issued by the defendant, and purchased and canceled by the trustees of the internal improvement fund, with the proceeds of the sale of said railroad, made by the said trustees. It is admitted that the purchasers of the road, at that sale, have paid the one-half of 1 per cent. semiannually, upon the bonds remaining uncanceled, amounting to 228 since said sale; but it is contended that this defendant is also liable to pay to the said trustees, as a sinking fund, one-half of 1 per cent. upon the balance of the entire original issue of the first mortgage bonds. The warrant for such payment is alleged to be found in the act of the general assembly of the state of Florida, entitled "An act to provide for and encourage a liberal system of internal improvements in this state," approved January 6, 1855. The second section of that act provides that the trustees therein created shall receive and demand, semiannually, the sum of one-half of 1 per cent. on the entire amount of the bonds issued by the said railroad company. The third section provides that upon the failure of the railroad to pay the interest upon the bonds, and the sum of 1 per cent. per annum as a sinking fund, it shall be the duty of the trustees, after the expiration of 30 days from default, to seize and sell said road, —the proceeds of sale to be applied to the purchase and cancellation of the outstanding bonds issued by said company, or incorporated with the sinking fund. And the said section also provides that the purchaser at such sale shall be bound to continue the payment of one-half of 1 per cent., semiannually, to the sinking fund, until all the outstanding bonds are discharged. The twelfth section provides that after the completion of a road the company shall pay to the trustees of the internal improvement fund at least one-half of 1 per cent. on the amount of indebtedness or bond account every six months, as a sinking fund, to be invested by them in the class of securities named in section 2, or to be applied to the purchase of the outstanding bonds of the company; but it shall be distinctly understood that the purchase of said bonds shall not relieve the company from paying the interest on the same, they being held by the trustees as an investment on account of the sinking fund.

In order to determine what was the intention of the lawmaking power, the three sections above mentioned must be construed together. When the various clauses of the said sections are properly collected, the intentions of the legislature may be fairly, and I think clearly deduced. The second section of said act invests the trustees with power to receive and demand, semiannually, the sum of one-half of 1 per cent. (after each separate line of railroad is completed) on the entire amount of bonds issued by said railroad company, and invest the same, etc. This clause defines the power and duty of the trustees with regard to the semiannual collection of one-half of 1 per cent. upon bonds issued by any railroad company. The twelfth section defines the duty of the railroad company, and requires payment of one-half of 1 per cent., semiannually, on the amount of indebtedness, or bond account, which means indebtedness on bond account. The third section provides that, upon a failure on the part of any railroad company to pay the sum of 1 per cent. per annum as a sinking fund, it shall be the duty of the trustees, after 30 days from such default, to seize and sell the road and all its property for cash or additional approved security. If sold for cash, the proceeds to be applied to the purchase and canceling of outstanding bonds of said company, or to be incorporated with the sinking fund; provided, that in making such sale it shall be conditioned that the purchasers shall be bound to continue the payment of one-half of 1 per cent., semiannually, to the sinking fund, until all the outstanding bonds are discharged, under the penalty of an annulment of the contract of purchase, and the forfeiture of the purchase money paid in. Now, the question is, what was the payment of one-half of 1 per cent., to be paid to the sinking fund by the purchasers, to be continued to be paid upon? Certainly, upon the same indebtedness upon bonds which the company which issued them were bound to pay; and that is upon the indebtedness on bond account. It seems quite clear that the amount of indebtedness on bond account means upon bonds outstanding, as there can be no indebtedness remaining upon bonds which have been canceled. It follows, as a necessary sequence, that the Florida Railroad purchasers under the sale made by the trus-

---

[1] [Not previously reported.]

tees are liable to pay only one-half of 1 per cent., semiannually, upon the bonds outstanding; that is, upon two hundred and twenty-eight in number, calling for one thousand dollars each. This they have done. There is therefore nothing due from the said purchasers to the sinking fund, and no ground for either legal or equitable relief. It is also quite clear that if the law were otherwise the complainants, Vose & Wagner, could not be joined with the receiver in a bill to recover the deficiency. The court, having undertaken to administer a trust fund, will not permit any interference by any party. The action of the receiver is the action of the court itself.

[The cause was subsequently heard on motions for attachments, for contempt in disobeying injunctions, for appointment of receivers, etc. See Cases Nos. 17,008 and 17,011.]